1
2
3
4
5
6
7                      IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   CHONGT YANG,

11              Petitioner,            No. 2:11-cv-0212 KJM AC P

12        vs.

13   M.D. McDONALD,

14              Respondent.          FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of first degree murder by

18   a Sacramento County jury in 2007 and sentenced to a term of 25 years to life imprisonment.

19   Clerk's Transcript (CT) , pp. 587-588 (Abstract of Judgment).  Petitioner challenges his

20   conviction on grounds that (1) the jury's verdict was coerced by a supplemental instruction given

21   during deliberations, and (2) that the jury committed misconduct.  Petition (Doc. No.1) pp. 5-6.

22   The petition was filed on January 24, 2011.  An answer was filed on May 23, 2011, following

23   one extension of time.[1]  Petitioner's traverse was filed on August 3, 2011 following two

24   extensions of time.

25   _____

26        [1]     An Amended Answer was filed a week later, on June 1, 2011.  It contains no
     substantive amendment, but merely corrects a minor formatting error in the original document.

**I. Standards Governing Habeas Relief Under the AEDPA**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." (Terry) Williams v. Taylor, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the

2

"governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law.  Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams, 529 U.S. at 405.  This includes use of the wrong legal rule or analytical framework.  "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA."  Benn v. Lambert, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case."  Williams, 529 U.S. at 407-08.  It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).  This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable."  Williams, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause).  State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error.  See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S. at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909

1   (2005); Porter v. McCollum, 130 S. Ct. 447, 454 (2009).

2        The "unreasonable application" clause permits habeas relief based on the

3   application of a governing principle to a set of facts different from those of the case in which the

4   principle was announced.  Lockyer, 538 U.S. at 76.  AEDPA does not require a nearly identical

5   fact pattern before a legal rule must be applied.  Panetti v. Quarterman, 551 U.S. 930, 953

6   (2007).  Even a general standard may be applied in an unreasonable manner.  Id.  In such cases,

7   AEDPA deference does not apply to the federal court's adjudication of the claim.  Id. at 948.

8        Where the state court's adjudication is set forth in a reasoned opinion,

9   §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis."

10   Frantz, 533 F.3d at 738 (emphasis in original).  A different rule applies where the state court

11   rejects claims summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held

12   that when a state court denies a claim on the merits but without a reasoned opinion, the federal

13   habeas court must determine what arguments or theories may have supported the state court's

14   decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at

15   786.

16        Relief is also available under AEDPA where the state court predicates its

17   adjudication of a claim on an unreasonable factual determination.  Section 2254(d)(2).  The

18   statute explicitly limits this inquiry to the evidence that was before the state court.  Even factual

19   determinations that are generally accorded heightened deference, such as credibility findings, are

20   subject to scrutiny for objective reasonableness under § 2254(d)(2).  See, e.g., Miller-El v.

21   Dretke, 545 U.S. 231, 240 (2005) (rejecting credibility finding as unreasonable in light of the

22   evidence before the state court).

23        To prevail, a habeas petitioner must establish  the applicability of one of the §

24   2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his

25   custody under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc).

26   There is no single prescribed order in which these two inquiries must be conducted.  Id. at

4

1  736-37.  The AEDPA does not require the federal habeas court to adopt any one methodology.

2  Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

3  **II.  Factual and Procedural Background**

4          Petitioner Chongt Yang and co-defendant Ge Lor Pao were charged with murder

5  in relation to a gang-related shooting in Sacramento.  In an unpublished opinion, the Third

6  District Court of Appeal summarized the facts as follows:

7           The defendants are members of the Yang Boyz or YBZ gang, a
         subset of the Hmong Nation Society or HNS gang.  The victim, Pra
8         Sert Yang (Pra), was a member of the Menace Boys Crew or MBC
         gang.  MBC and HNS are rival gangs.

9
         On February 20, 2005, Pra was driving his red Honda in
10        Sacramento, and the defendants, along with Bou Vang (Pao's
         girlfriend) and Cheng Xiong Vang, were riding in a gold Toyota,
11        also in Sacramento.  Eventually, both cars were headed eastbound
         on Florin Road, near Stockton Boulevard, at the same time.
12
         The red Honda stopped on Florin Road, at the intersection with
13        Stockton Boulevard, in the left turn lane.  The gold Toyota pulled
         to the right lane.

14
         The defendants exited the gold Toyota in traffic – Pao from the
15        front passenger seat and Yang from the rear passenger seat.  Each
         had a gun.
16
         The defendants approached the red Honda.  Each of the defendants
17        shot multiple times at Pra, who was inside the Honda.  He was hit
         six times and killed.

18
         After the defendants returned to the gold Toyota, it went through
19        the parking lot of a business on the corner and then onto
         southbound Stockton Boulevard.

20

21  People v. Chongt Yang, 2009 WL 3069579 at *1 (Cal. Ct. App. Sept. 28, 2009).

22          Both defendants were charged with murder.  The district attorney alleged that the

23  murder was committed for the benefit of a criminal street gang and that a principal in the offense

24  used a firearm.  The defendants were tried together, but with separate juries.  Yang's jury

25  convicted him of first degree murder and found true the allegation that he committed the crime

26  for the benefit of a criminal street gang.  The jury found not true the firearm use allegation.  The

                                                    5

trial court sentenced Yang to state prison for an indeterminate term of 25 years to life.[2]  People v. Yang, 2009 WL 3069579 at * 1.[3]

Yang filed his opening brief on appeal, raising the same issues presented here, on July 17, 2008.  The Third District Court of Appeal affirmed the conviction on September 28, 2009.  A petition for review was filed in the California Supreme Court on November 2, 2009, and denied on January 13, 2010.  In his pro se petition to this court, Yang provides the barest outline of his claims and refers the court to his state court briefing and the record on appeal. Respondent has lodged the pertinent state court record, from which the following description of Yang's claims is largely derived.

**III.  Petitioner's Challenge to the Supplemental Jury Instruction**

**A.  Facts**

The jury began deliberations on May 21, 2007.  On May 29, the jury submitted a written question to the trial court.  There had been eight prior requests during five days of deliberations.  The first six requests involved the evidence, including requests for read back of testimony.[4]  The seventh and eight requests sought clarification of the instructions on aider and abetter liability.[5]  The ninth request, at issue here, stated: "What is the procedure that would be taken when 1 or more jurors are unable to make up their mind/decision one way or the other?" CT 523.

---

[2]     Petitioner's co-defendant, Pao, was convicted of first degree murder and his jury found true both the allegation that he committed the crime for the benefit of a criminal street gang and the allegation that a principal personally used a firearm, including personally discharging a firearm and causing death.  Pao was sentenced to an indeterminate state prison term of 25 years to life for first degree murder with a consecutive 25 year-to-life term for the firearm enhancement.  People v. Yang, 2009 WL 3069579 at *1-* 2.

[3]     See also, CT 280, 287, 290-301, 302-307, 311, 315, 318, 325, 526-529, 587, 588; RT 2725-2726.

[4]     CT 497, 499, 501, 508, 509, 513.

[5]     CT 519, 521.

1        The trial court prepared a proposed answer and allowed the prosecutor and

2  counsel for Yang to review it.  Counsel for Yang objected that the instruction was not

3  appropriate:

5        The Court: Let's go back on the record outside the presence of the
         jury.  Mr. Yang is present.  Mr. Bowman.  Mr. Norgaard.

6        I have asked you to be present in that I have received a question
         from the jury.  "What is the procedure that would be taken when
7        one or more jurors are unable to make up their minds slash
         decision one way or the other?"

9        I prepared a response based on the standard response that has been
         approved by the Third District Court of Appeal.  I think Mr.
         Norgaard had no objections to it.  I think, Mr. Bowman, you had
10       objections, so I wanted to give you an opportunity to state the
         objections for the record.

12       Mr. Bowman: Yes, your Honor.  First of all, I object to the
         guideline instruction in general.  I think, first of all, the question
         appears to be, What is the procedure.  It does not look like the jury
13       is asking for further clarification or further instruction from the
         Court.  They are just simply asking what the procedure is and the
14       procedure is you inform the Court you are unable to reach a
         decision.  You inform the Court as such.  So I think this instruction
15       may be premature.

16  RT 2626-27.

17       Defense counsel also specifically objected to the first paragraph of the proposed

18  instruction, which was an introduction stating that it was the court's experience that a jury having

19  difficulty may ultimately succeed in rendering a verdict:

20       [Mr. Bowman:] And, secondly, um, specifically as to the
         instruction itself, I'm- - with the first paragraph, In response to
21       your questions it has been my experience that juries initially
         reporting difficulty reaching a verdict may nonetheless ultimately
22       be able to arrive at a verdict, and then it goes on to say, I suggest
         the following.  I'm not sure it's really - - I understand that this
23       instruction has been approved by the Third District Court, but I
         think it's not really appropriate to highlight the Court's experience
24       with respect to other juries, their deliberations, and whether or not
         they are ultimately able to reach a verdict.  It's of no consequence
25       to this case.

26       The Court: I have no problem taking out the first paragraph.  It

7

1   adds - - I think the body of the instruction is really where the key
    issues are at.  Mr. Norgaard, any comments?

2

3   Mr. Norgaard: The only thing is I don't have the opinion in front
    of me.  Is that first opinion in the Third's opinion?

4   The Court: It's in there.

5   Mr. Norgaard: It would be my request to give it.  The Third has
    made it pretty clear not to toy with this thing, that this is the
6   instruction they want given.  So I would ask that it be given
    unmodified.  That is the safest course of action.

7
    The Court: I will take out the first paragraph.  I understand the
8   objections.  The reason I will take it out, this instruction is given
    orally to the jury when, in fact, the jury reported they are
9   deadlocked.  Here I don't have a report of deadlock.  I simply have
    a report that one can reasonably infer reflects a certain measure of
10  difficulty that the jury is having.

11  So my goal here is simply to give them some suggestions and ideas
    that hopefully would assist them in their deliberations and nothing
12  more than that at this point in time.  I will go ahead and modify the
    first paragraph and send that in.

13  RT 2627-28.

14

15          The following written instruction was sent to the jury, with italics added here to

16  highlight the portion of the instruction with which Yang found fault on appeal:

17          Your goal as jurors should be to reach a fair and impartial verdict
            if you are able to do so, based solely on the evidence, without
18          regard to emotional considerations or the consequences of a
            verdict, regardless of how long it takes.

19
            Your duty is to carefully consider, weigh and evaluate all of the
20          evidence presented at the trial, to discuss your views regarding the
            evidence, and to listen to and consider the views of your fellow
21          jurors.  *In the course of further deliberations, you should not
            hesitate to re-examine your own views or to request your fellow
22          jurors to re-examine theirs. It should be possible to inquire of
            jurors in the numerical minority as to the reasons upon which their
23          opinions are based.  This should be done in a respectful and
            dignified manner.  Likewise, jurors in the numerical majority may
24          also be required to explain their own opinions.* You should not
            hesitate to change a view you once held if you are convinced it is
25          wrong, or to suggest that other jurors change their views if you are
            convinced they are wrong.  Fair and effective deliberations require
26          a frank and forthright exchange of views.

8

As I previously instructed, both the People and the defendant are entitled to the individual judgment of each juror. Each of you must decide the case for yourself. But your decision should be made only after full and complete consideration of all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge and enhancements if you can do so without violence to your individual judgment.

You have absolute discretion to conduct deliberations in any way you deem appropriate. However, since you have expressed that you are having difficulty in arriving at a verdict using methods you have chosen so far, may I suggest that you consider changing those methods, at least temporarily, and try new methods. For example, you may wish to consider having different jurors lead the discussion for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position. This might enable you to better understand the other's positions.

By suggesting changes in your method of deliberations, I want to stress I am not dictating or instructing you as to how to conduct your deliberations. I am just saying that you may find it productive to do whatever is necessary to ensure each juror has a full and fair opportunity to express his or her views and consider and understand the views of the other jurors.

I hope my comments and suggestions are of some assistance to you.

CT 524-525.

## B.      Exhaustion

Yang contends that the supplemental jury instruction coerced the verdict against him. Respondent argues that the claim is unexhausted. It is a prerequisite to federal habeas review that the applicant have first exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, habeas petitioners must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and to correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (internal quotation marks omitted).

On appeal and in his petition for review to the California Supreme Court, Yang argued that the instruction violated California decisional law and his rights under the California

9

1    Constitution.  He did not allege a violation of his rights under the United States Constitution.

2    The only federal authority that Yang presented to the state's highest court was <u>Allen v. United</u>

3    <u>States</u>, 164 U.S. 492 (1896), a case that was not based on constitutional principles.  In order to

4    satisfy the exhaustion requirement, a petitioner must alert the state court to the fact that the

5    asserted claim is a federal one, no matter how similar the state and federal standards for

6    reviewing the claim may be.  <u>Duncan</u>, 513 U.S. 3at 365; <u>Johnson v. Zenon</u>, 88 F.3d 828, 830-31

7    (9th Cir. 1996).  This Yang did not do.

8            Respondent therefore is correct that the claim is unexhausted, and relief is

9    unavailable for that reason.  The claim may also be denied on the merits, however.  <u>See</u> 28

10   U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits,

11   notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

12   State.").  The undersigned accordingly turn to the merits of the claim.

13   **C.      Merits of Coerced Verdict Claim**

14           In this court as in the state court, Yang argues that the supplemental instruction

15   violated his rights under state law.  Federal habeas relief is not available for violations of state

16   law.  <u>Waddington v. Sarausad</u>, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that 'it is

17   not the province of a federal habeas court to reexamine state-court determinations on state-law

18   questions,'" quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991)).

19           Moreover, even if the pro per petition could be construed as alleging that the

20   supplemental instruction violated Yang's federal due process right to an uncoerced verdict, <u>see</u>

21   <u>Lowenfield v. Phelps</u>, 484 U.S. 231, 241 (1988), the facts would not support relief.   An

22   instruction which encourages dissenting jurors to give weight to the views of the majority (a so-

23   called "<u>Allen</u> charge"), is not so inherently coercive that it violates the due process right to a fair

24   and impartial jury.  <u>Id.</u> at 237.

25           In assessing coercive effect, it is clearly established that the court must consider

26   the instruction "in its context and under all the circumstances."  <u>Jenkins v. United States</u>, 380

10

1   U.S. 445, 446 (1965) (per curiam).  Factors relevant to the analysis include (1) the form of the

2   instruction, (2) the amount of time of deliberation following the charge, (3) the total time of

3   deliberation, and (4) other indicia of coerciveness.  <u>Weaver v. Thompson</u>, 197 F.3d 359, 366

4   (9th Cir. 1999).  The total coercive effect of the circumstances presented here falls short of that

5   which has been held sufficient to warrant habeas relief, both under AEDPA and under pre-

6   AEDPA standards.  Indeed, the circumstances here are even less indicative of coercion than are

7   those of other cases in which the U.S. Supreme Court and the Ninth Circuit have denied relief.

8           In <u>Early v. Packer</u>, 537 U.S. 3 (2002), the Supreme Court reversed the Ninth

9   Circuit and determined that the California court had reasonably concluded an instruction was not

10  coercive.  In that case, the jury deliberated for 28 hours before one juror asked to be removed

11  from the jury.  The foreperson accused that juror of failing to deliberate, and reported to the trial

12  judge that the other jurors questioned the ability of the one juror to understand the rules and to

13  reason.  <u>Id.</u> at 4.  The court read the foreperson's note aloud to the entire jury, instructed it that

14  the one juror had the right to disagree with the rest of the jurors, inquired as to the latest vote

15  count, and admonished the jury to consider the law as instructed and the facts as they found

16  them.  The next day, the one juror again asked to be removed, but the court insisted she continue

17  trying to deliberate.  The jury returned a guilty verdict after two more days of deliberation.  <u>Id.</u> at

18  4-6.  The Supreme Court upheld the state appellate court's determination that no coercion had

19  occurred, concluding that it was neither contrary to nor an unreasonable application of Supreme

20  Court precedent.  <u>Id.</u> at 11.  In <u>Deweaver v. Runnels</u>, 556 F.3d 995 (9th Cir. 2009), <u>cert. denied</u>,

21  130 S. Ct. 183 (2009), the Ninth Circuit followed <u>Early</u> and denied relief where the trial court

22  had singled out a holdout juror, inquired into the deliberative process, and given a 45-minute

23  hypothetical that illustrated the permissible inference of guilt from circumstantial evidence.

24          The circumstances in the present case are significantly less suggestive of coercion

25  than those in <u>Early</u> and <u>Deweaver</u>.  First, the context in which the supplemental instruction was

26  given does not suggest that the jury was divided or that any jurors were experiencing pressure

1  from their fellows.  There was no report of any juror unable or refusing to deliberate, seeking

2  removal, or holding to a minority opinion.  The jury's note indicated that, at most, one or more

3  jurors were having difficulty making a decision one way or the other – not that jurors had

4  reached decisions different from one another.[6]  There is no suggestion that there was conflict

5  among the jurors.  In the absence of such dynamics, the risk of coercion is substantially reduced.

6  See United States v. Berger, 473 F.3d 1080, 1093 (9th Cir. 2007) (fact that jury was not

7  deadlocked weighs against finding coercion by judge's statements), cert. denied, 552 U.S. 1097

8  (2008).

9            Here, unlike Earp and Deweaver, the trial judge did not address the jurors in

10  person but instructed in writing only.  A personal address from the judge may contribute to the

11  potential coercive effect of an Allen charge or similar supplemental instruction, by highlighting

12  the judge's interest in moving the jurors toward unanimity.  Minority jurors (whether or not their

13  identities are known to the judge) may feel that the judge's concern is directed at them.  Here the

14  judge responded in writing, as he had responded to previous jury notes.  This method of

15  communication itself conveyed that the jury's request for information and the court's response

16  were not qualitatively different from previous requests and responses.

17            Significantly, the court did not inquire into the status of deliberations or the

18  deliberative process, let alone inquire about the vote count.  Such inquiry can heighten the

19  potential for coercion, although it is insufficient without more to violate the constitution.

20  Compare Jiminez v. Myers, 40 F.3d 976, 980 (9th Cir. 1993) (verdict coerced where judge

21  questioned deadlocked jury intently and repeatedly about the results of all votes and whether

22  _____

23            [6]      The state appellate court's references to a declared deadlock, People v. Yang,
   2009 WL 3069579 at * 3 - *5, are factually inaccurate – perhaps unreasonably so.  However,
24  because the (putative) federal claim was not adjudicated by that court, the decision on appeal is
   not subject to scrutiny under § 2254(d)(2).  See Gentry v. Sinclair, 693 F.3d 867, 879 (9th Cir.
25  2012).  Even if (d)(2) applied it would not support habeas relief here, because the state court's
   finding that there had been no coercion was not "based on" the erroneous assumption that there
26  had been a deadlock.  See § 2254(d)(2).  The analytical framework for assessing coercion would
   be the same whether or not there had been a deadlock.

1 | there had been movement), cert. denied, 513 U.S. 810 (1994), with Locks v. Sumner, 703 F.2d

2 | 403, 407 (9th Cir.) (trial court's neutral inquiry into the division of the jury without other

3 | circumstances suggestive of coercion does not deprive a defendant of due process), cert. denied,

4 | 464 U.S. 933 (1983); see also United States v. Lorenzo, 43 F.3d 1303, 1307 (9th Cir. 1995) (no

5 | coercion where judge was aware of 11-1 split, but not the identity of the dissenter or which way

6 | the vote was leaning).

7 |          On appeal Yang specifically challenged the portion of the supplemental

8 | instruction that urged both jurors "in the numerical minority" and those "in the numerical

9 | majority" to re-examine their views and to explain their positions to their fellow jurors.   This

10 | general and even-handed advice, given without any inquiry into the existence or extent of a

11 | numerical split, would not have had the likely effect of pressuring minority jurors to change their

12 | positions.   Use of the terms "numerical minority" and "numerical majority" does not transform

13 | the instruction into a coercive inquiry into, or comment on, actual numerical division.

14 |          The rest of the instruction is innocuous.  Pursuant to state law, the court (1)

15 | informed the jurors that they had "the absolute discretion to conduct your deliberations in any

16 | way you deem appropriate;" (2) emphasized that it is the jury's duty to weigh the evidence; (3)

17 | informed the jurors that their "goal as jurors should be to reach a fair and impartial verdict if you

18 | are able to do so based solely on the evidence" and "without doing violence to your individual

19 | judgment;" (4) phrased the comments by the judge as suggestions; and (5) stressed that the trial

20 | judge was not "dictating or instructing you as to how to conduct your deliberations."  See People

21 | v. Moore, 96 Cal.App.4th 1105, 1119 (2002).  Nothing in this language could reasonably be

22 | interpreted as pressure to surrender a conscientious doubt as to guilt.  The court made it clear to

23 | the jury that all matters of fact were for its determination, which is the "essential question" in

24 | assessing coerciveness.  Navellier v. Sletten, 262 F.3d 923, 943 (9th Cir. 2001).  For these

25 | reasons, the form of the instruction does not suggest coercive effect.

26 |          Nor does the time that the jury deliberated after receiving the charge, in relation

13

to the total time of deliberation, suggest a due process violation.  The instruction was given on

the fifth day of deliberations.  The previous jury notes and readbacks of testimony indicate that

the jury was fully engaged in review of the evidence throughout that time.  The fact that the jury

asked for clarification of aider and abetter liability, and ultimately found unproven the allegation

that Yang had personally used a firearm, do suggest that the jury may have struggled to

determine the facts related to Yang's role in the crime, and/or the liability that followed from the

facts as the jury found them.  However, that it was not an easy case does mean that the verdict

was the result of coercion.  This is especially so given the absence of any indication that the jury

was actually divided.  The record of deliberations is fully consistent with a jury that was

conscientiously working as a body.  See Berger, 473 F.3d at 1093 (fact that jury was deliberating

means that "the judge did not make his remarks in an atmosphere where the jurors would have

felt that unanimity was their only escape from the jury room.").

          The supplemental instruction was given at 1:44 p.m. on Tuesday, May 29, 2007.

CT 518.  The jury recessed shortly thereafter and reconvened on the following Thursday

morning.  The verdict was reached on Thursday afternoon.  CT 526-27.  This chronology does

not indicate that the instruction had coercive effect.  The Ninth Circuit has repeatedly found no

coercion where the length of deliberations between instruction and verdict was comparable to or

less than that in this case.  See e.g., United States v. Bonam, 772 F.2d 1449, 1450-51 (9th Cir.

1985) (per curiam) (one-and-a-half hours); United States v. Beattie, 613 F.2d 762 (9th Cir.)

(three-and-a-half hours), cert. denied, 446 U.S. 982 (1980); Lorenzo, 43 F.3d at 1307 & n.3

(five-and-a-half hours); compare Weaver, 197 F.3d at 366 (coercion found when jury returned

with unanimous verdict five minutes after receiving Allen charge).  Moreover, the break from

deliberations following the supplemental instruction reduces the potential for coercion.  See

United States v. Steele, 298 F.3d 906, 911 (9th Cir.) ("[t]he fact the jury reached its verdict half

an hour after returning from a weekend recess could merely reflect that the jurors came to a

resolution during a weekend when they individually pondered the evidence.  The weekend

1  interval itself probably would have diluted any coercive effect of an <u>Allen</u> charge ....”), <u>cert.</u>

2  <u>denied</u>, 537 U.S. 1096 (2002).

3          The record reflects circumstances unrelated to the supplemental instruction that

4  may have influenced the timing of the verdict.  The jurors had been told at the outset of trial that

5  the proceedings would conclude by the end of May.  On the basis of this representation, Juror

6  No. 6 had scheduled a vacation beginning on June 1.  Other jurors had also made plans for June.

7  On the morning of Thursday, May 31, 2007, the jury requested to adjourn early so that Juror No.

8  6 could catch a flight that had been rescheduled for an earlier departure than originally booked.

9  After determining that the juror could take a flight early the next morning instead, the judge

10  denied the request.  However, it remained obvious that if deliberations continued into June there

11  would be additional scheduling conflicts for other jurors.  CT 526; RT 2633-36.  The entire jury

12  was addressed by the judge at 1:47 p.m.  The court inquired about the various scheduling

13  problems, and advised the jurors that they would not deliberate on June 1 but would resume

14  deliberations on June 4.  CT 527; RT 2637-2641.  The court specified, “You need to continue

15  your deliberations until such time as you can reach a verdict or you are unable to reach a verdict

16  and you can report that to me.”  RT 2640.  The verdict was announced at 2:54 that afternoon.

17  CT 257.

18          Any extrinsic pressure on jurors to reach a verdict prior to June 1 was likely the

19  result of the jurors’ own schedules and not the supplemental instruction given on May 29.

20  Indeed, the court’s comments on May 31 specifically gave the options of reaching a verdict or

21  reporting an inability to reach a verdict, without any suggestion that the court preferred one

22  option over the other.  Under these circumstances, it would be unreasonable for a state court to

23  find that any last-minute rush to judgment was the result of the supplemental instruction.[7]

24  _____

25          [7]      To be clear, the undersigned does not find that the verdict was rushed.  The

26  jurors’ scheduling problems are significant because they demonstrate that *even if* any jurors felt

(continued...)

1        Finally, the fact that Yang's jury found in his favor on the firearm enhancement

2   tells us that  the jurors exercised "their rational and independent review of the evidence" and did

3   not succumb to the court's alleged coercion.  See United States v. Plunk, 153 F.3d 1011, 1027

4   (9th Cir. 1998) (mixed verdict weighs against coercion) (quoting United States v. Cuozzo, 962

5   F.2d 945, 952 (9th Cir. 1992)), cert. denied, 526 U.S. 1060 (1999).

6        The circumstances of this case, viewed in their totality, do not support the claim

7   that Yang's jury was improperly coerced.   Even if the matter is considered de novo rather than

8   with the deference AEDPA would require, the claim fails.  Yang's corollary argument, that the

9   supplemental instruction was not "approved" by the "Supreme or federal courts," fails to

10  implicate any federal constitutional right.   Accordingly, the claim should be denied on the

11  merits as well as for lack of exhaustion.

12  **IV.    Petitioner's Jury Misconduct Claim**

13       **A.    Facts**

14       Yang moved the trial court for a new trial on grounds of juror misconduct.  He

15  claimed that the foreman of the jury committed misconduct by refusing another juror's request to

16  get clarification from the court on the aiding and abetting instructions. He also alleged that the

17  juror seeking guidance was harassed.  CT 540-544.  The motion was supported by an

18  investigator's report of an interview with Juror No. 4, who had contacted defense counsel

19  following the verdict.  According to the report, Juror No. 4 had been pressured by other jurors on

20  the final day of deliberations into joining a verdict with which he did not agree.  CT 545-546.[8]

21

22

23

24  [7](...continued)
    pressured to reach a verdict on May 31, that pressure was most likely unrelated to the court's
25  supplemental instruction.

26  [8]    Juror No. 4 told the investigator that the foreman had rushed a vote because of
    Juror No. 6's travel needs, which arre discussed above in relation to Claim One.  CT 545.

                                            16

At hearing on the new trial motion, the judge questioned Juror No. 4 as follows:[9]

Q.  Okay.  What specifically did you think was improper?

A.  Um, the foreman said that we were going to vote in 15 minutes and he didn't want to hear anything else.

Q.  Okay.  And so when the foreman made that statement that there was going to be a vote in 15 minutes, is that what you thought was improper?

A.  Yes.

Q.  Was there anything else that occurred in the jury deliberations room that you thought was improper besides the foreman's statement that the vote was going to occur in 15 minutes?

A.  I had asked, um, about - - I had asked the foreman to ask the Judge to clarify certain points within the, um, charges and the jurors instructions and that was denied.

Q.  Okay.  And when did you make that request of the foreman?

A.  Um, on the last day of deliberations and at least on one occasion prior to that.

Q.  And the specific request that you wanted clarification about, what was that?

A.  Well, I remember one was about the aiding and abetting charge, charge number one, I wanted clarification on that.  Um, then there was one other - - there was one other, um, item that I remember and that was - - I'm sorry.  Hang on a second for me.

Q.  Take your time.

A.  Can I draw up a presentation at home and the jury foreman said, No, but I wanted to ask the Judge and he said, We don't want to do that.

Q.  Can I throw up a presentation?

A.  Can I draw up a presentation um, while I'm at home instead of in the deliberation room.

---

[9]     The juror's testimony was limited to events during deliberations that the defense sought to characterize as misconduct.  The juror was not permitted to testify about his own deliberative process or to directly impeach his verdict.  RT 2713 (judge will permit testimony on question "whether or not there was something that occurred in the jury deliberation room that prevented him from performing his duties as a juror.").

1   Q.  So you wanted to do something outside of the jury deliberation
    room and then present that to the panel as a whole?

2

3   A.  That's correct.

    Q.  And you were precluded from doing that?

4

5   A.  Um, no.  Um, I wanted to ask the Court whether I could do
    that.

6   Q.  Whether you could do some work at home?

7   A.  Right.

8   Q.  And I assume that's written work or some - -

9   A.  Correct.

10  Q.  - - kind of computer work?

11  A.  I wanted to draw up some ideas at work and then - -

12  Q.  You wanted what?

13  A.  I wanted to draw up some ideas at work and then present that
    during deliberations.

14
    Q.  Okay.  So you actually wanted to write some things up or put

15  them in some form?

16  A.  In an outline form.

17  Q.  Pardon me?

18  A.  In an outline form.

19  Q.  Okay.

20  A.  So that I can be organized and be ready to give it in a
    presentation during the day.

21
    Q.  All right.  Other than those two things, the jurors are going to

22  vote in 15 minutes - -

23  A.  Uh-huh.

24  Q.  - - and - - actually, I guess there are three things.  And a request
    for clarification on aiding and abetting - -

25

26  A.  Uh-huh.

Q.  - - and a request to draw up in some outline form something you could present, was there anything else you considered improper?

A.  Um, can I look at a brief outline that I drew up?

Q.  Okay.

A.  Okay.  I don't know if this is improper, but on the second day of deliberations, um, which is only a few hours after the first day because the first day was only a few short hours, um one of the jurors decided that she was going to vote guilty no matter what and that if anybody else felt that way, why don't we just declare a hung jury right away.  And I don't know if that is improper, but I'll - - I think I will let the Court decide that.

Q.  Okay.  What I'm trying to inquire into more specifically is what you observed that you felt impeded your ability to perform your duties as a juror and you've identified three things specifically and you've also identified this fourth thing that occurred on the second day that one of the jurors said, but is there something that you felt specifically caused you to be unable to perform your duties?

A.  I think there was.  Um, during my presentation on the last day, um, I noticed that one of the jurors turned her chair sideways to my presentation and I considered that, um, to be a juror who wasn't open to what I was saying at all.

Q.  How did that impede you though?

A.  Okay.  I'm sorry.  I didn't make that distinction.  I don't think it impeded me - - impeded me but it discouraged, me but, um, it may not be an impediment.

Q.  All right.  Is there anything else you can identify at least that you thought that occurred that was improper and that did impede you in performing your duties?

A.  When I was reviewing the evidence, in particular the phone records, um, one of the jurors said, What are you looking at the phone records for, either he is guilty or not guilty, and I think that impeded me from reviewing the records to look at whether - - whether the records might reveal guilt or innocence.

Q.  All right.  Thank you very much. ...

RT 2716-2719.

Defense counsel conceded that of the several circumstances the juror identified as

1    impeding his verdict, "the only one that appears to have . . . some merit would be the one where

2    he is asking for some clarification on what aiding and abetting was and was told there was not

3    going to be any more clarification . . ." RT 2719-2720.   Counsel stated that there might be other

4    jurors who had also been prevented from obtaining necessary information, and on that basis

5    requested a continuance and access to juror identifying information in order to expand the

6    motion.  RT 2720.  Both this request and the new trial motion were denied, and the court

7    proceeded immediately to judgment and sentencing.  RT 2722-2723.

8         **B.      State Court Adjudication of the Claim**

9              On appeal and in his petition for review to the California Supreme Court, Yang

10   argued that denial of the new trial motion, denial of his request to unseal juror information, and

11   denial of a continuance violated his right to due process under the United States Constitution.

12   Petition for Review (Lodged Doc. No. 5) at 16.  The claim accordingly is exhausted, and the

13   reasoned opinion of the Third District Court of Appeal is the presumptive focus of this court's

14   review.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991) (federal habeas court "looks

15   through" summary denial to last reasoned state court opinion).

16             Although Yang fairly presented his federal claim to the California courts, the

17   appellate opinion does not mention the federal aspect of the jury misconduct issue.[10]  The state

18   court's discussion is limited to analysis of the alleged errors under state law.  People v. Chongt

19   Yang, 2009 WL 3069579 at *6-*9.  The U.S. Supreme Court will decide this term whether, in

20

21             [10]     The state court's failure to cite the "clearly established federal law" does not,
     without more, overcome the hurdle of § 2254(d)(1).  Mitchell v. Esparza, 540 U.S. 12 (2003)
22   (holding that a state court's opinion is not "contrary to" clearly established Federal law when it
     does not cite Supreme Court opinions so long as neither the reasoning nor the result contradicts
23   them).  This is a different question than whether the federal claim was adjudicated by the state
     court in the first place, which determines whether AEDPA standards apply.  If the claim was
24   adjudicated, the question for this court becomes whether the reasoning or result of the California
     Court of Appeal contradict, or are objectively unreasonable in light of, the governing Supreme
25   Court precedents.  See id.

26

such circumstances, there has been a state court "adjudication" of the federal issue within the

meaning of  § 2254(d).  Johnson v. Williams, U.S.S.C. No. 11-465 (argued October 3, 2012).  In

Johnson, a non-capital California case, the petitioner had argued in state court that the mid-

deliberations discharge of a holdout juror violated state law and the Sixth Amendment.  The

California Court of Appeal opinion addressed only the state law dimension of the claim, without

apparent consideration of the Sixth Amendment's constraints on trial court discretion in such

circumstances.  The Ninth Circuit held that there had been no "adjudication" of the federal claim

and that de novo review of the constitutional issue, rather than reasonableness review of the state

court opinion under § 2254(d), was appropriate.  Williams v. Cavazos, 646 F.3d 626 (9th Cir.

2011), cert. granted, 132 S. Ct. 1088 (2012).

　　　　　　　The outcome of Williams will not affect the result here.  For the reasons set forth

below, Yang's claim fails regardless of whether AEDPA or de novo review standards apply.

### C.　　The Denial Of The New Trial Motion

　　　　　　　The state appellate court analyzed the issue as follows:

> "A trial court has broad discretion in ruling on a motion for a new
> trial, and there is a strong presumption that it properly exercised
> that discretion." (*People v. Davis* (1995) 10 Cal.4th 463, 524.)
> "When the overt event is a direct violation of the oaths, duties, and
> admonitions imposed on actual or prospective jurors, such as when
> a juror conceals bias on voir dire, consciously receives outside
> information, discusses the case with nonjurors, or shares improper
> information with other jurors, the event is called juror
> misconduct." (*In re Hamilton* (1999) 20 Cal.4th 273, 294.)

> When a defendant seeks a new trial based on jury misconduct, the
> trial court must first determine whether the evidence presented for
> its consideration is admissible, then consider whether the facts
> establish misconduct. If misconduct is found, the court must
> determine whether the misconduct was prejudicial. (*People v.
> Duran* (1996) 50 Cal.App.4th 103, 112-113.) We review the trial
> court's determination on a motion for a new trial for abuse of
> discretion. (*Id*. at p. 113.)

> Here, Yang asserted in his motion for a new trial that Juror No. 4
> had been subjected to harassment. Interview notes attached to the
> motion for a new trial stated that Juror No. 4 believed he had made
> an error and that he was harassed into voting guilty. These notes

21

were not in the form of a declaration.

Juror No. 4 testified during the hearing on the motion for a new trial. He was questioned by the court. During his testimony, he made six allegations of misconduct. They were: (1) at some point during the deliberations, the foreman cut off deliberations by saying that they would vote in 15 minutes; (2) Juror No. 4 asked the foreman to ask the court to clarify the aiding and abetting instructions but the foreman denied the request; (3) the foreman would not let Juror No. 4 prepare a presentation at home and then present it to the rest of the jury; (4) one of the other jurors announced on the second day of deliberations that she was going to vote guilty "no matter what"; (5) one of the jurors turned her chair away from Juror No. 4's presentation and he believed that meant that she was not willing to consider his presentation; and (6) when Juror No. 4 was reviewing phone records, another juror said, "What are you looking at the phone records for, either he is guilty or not guilty?"

Although Juror No. 4 made multiple misconduct claims, counsel for Yang argued only that the foreman's denial of Juror No. 4's request to get clarifying instructions on aiding and abetting was juror misconduct and required the court to grant a new trial. The trial court found no misconduct, stating that the court gave the clarifying instructions concerning aiding and abetting. The court stated: "[I]t appears the foreman did exactly what [Juror No. 4] asked him to."

In response to this statement, counsel for Yang stated that he believed that Juror No. 4 wanted further clarification, specifically with respect to the difference between aiding and abetting before and after the crime. The court disagreed, noting that Juror No. 4 did not say that his difficulty was with that distinction or the definition of an accessory.

On appeal, Yang asserts that the foreman's refusal to obtain further instructions concerning aiding and abetting, as requested by Juror No. 4, constituted juror misconduct. The record does not support this assertion.

The testimony of Juror No. 4 was ambiguous concerning when he asked for clarification concerning the aiding and abetting instructions.  He said that he asked the foreman to get clarification from the court concerning "certain points within the, um, charges and the jurors['] instructions." This occurred "on the last day of deliberations and at least on one occasion prior to that."  When the court asked what those points were, Juror No. 4 replied that one had to do with clarifying the aiding and abetting instructions and the other was whether he could prepare a presentation at home.

From this exchange, it is unclear whether Juror No. 4 wanted

clarification concerning the aiding and abetting instructions on the last day of deliberations or some time before that. This is significant because, as Yang notes on appeal, the court gave clarifying instructions concerning aiding and abetting in response to a jury question, but that did not occur on the last day of deliberations. The court gave the additional instructions on aiding and abetting on May 29, 2007, and the jury finished its deliberations and rendered its verdict on May 31, 2007.

In denying the motion for a new trial, the trial court interpreted Juror No. 4's statement concerning clarifying the aiding and abetting instructions to be contemporaneous with the jury's request to the court in that regard.  That interpretation is supported by the ambiguous record.  Therefore, we must accept that interpretation because we uphold a trial court's factual determinations on appeal if they are supported by substantial evidence.  (*People v. Tafoya* (2007) 42 Cal.4th 147, 194.)

Yang, however, attempts to rely on the statements in the interview notes to contradict the findings of the trial court at the hearing on the motion for a new trial. As noted, the interview was not in the form of a declaration and, therefore, had no value as evidence.

The record supports the trial court's finding that Juror No. 4's complaint about the foreman's refusal to obtain further aiding and abetting instructions was unfounded. Therefore, the trial court did not abuse its discretion in denying the motion for a new trial by finding that there was no misconduct.

People v. Chongt Yang, 2009 WL 3069579 at *6-*7.

Consideration of Sixth Amendment principles does not require a different result. A criminal defendant is constitutionally entitled to the verdict of an impartial jury free of extra-judicial influences.  See generally, Duncan v. Louisiana, 391 U.S. 145, 149 (1968); Turner v. Louisiana, 379 U.S. 466. 472-73 (1965); Irvin v. Dowd, 366 U.S. 717, 722 (1961).  Juror misconduct, including the receipt of extrinsic evidence or communication with a witness or interested party, violates this principle.  Such misconduct can, if prejudicial, require habeas relief.  See e.g. Jeffries v. Blodgett, 5 F.3d 1180 (9th Cir. 1993) (relief available where jurors considered information not in evidence regarding defendant's criminal history), cert. denied, 510 U.S. 1191 (1994); Caliendo v. Warden of California Men's Colony, 365 U.S. 691 (9th Cir.) (relief granted where jurors engaged in lengthy conversation outside court with chief prosecution

23

1  witness), cert. denied, 543 U.S. 927 (2004).

2          Yang points to no authority for the proposition that the Sixth Amendment is

3  offended when a juror is prevented by other jurors from submitting a question to the trial court.

4  The undersigned has identified no such authority.  Because no Supreme Court precedent

5  establishes that the species of misconduct presented here violates the constitution, Yang cannot

6  satisfy his burden under § 2254(d).  See Earp v. Ornoski, 431 F.3d 1158, 1184-85 (9th Cir. 2005)

7  (claim fails where no clearly established Supreme Court precedent addressed the type of alleged

8  attorney/client conflict at issue), cert. denied, 547 U.S. 1159 (2006).

9          In Grotemeyer v. Hickman, 393 F.3d 871, 877 (9th Cir. 2004), cert. denied, 546

10 U.S. 880 (2005), the Ninth Circuit found that comments by the jury foreman to other jurors

11 during deliberations did not constitute jury misconduct in the constitutional sense, because the

12 comments did not introduce impermissible extrinsic information.[11]  Even under pre-AEDPA

13 standards, the facts here do not rise to the level of a constitutional violation.  Purely internal jury

14 relations, no matter how contentious or problematic, are generally immune from judicial inquiry.

15 See generally Tanner v. United States, 483 U.S. 107 (1987) (discussing limited exceptions to

16 general rule against inquiry into jury's deliberations); Old Chief v. United States, 121 F.3d 448,

17 451 (9th Cir. 1997) (same).  The California and federal rules of evidence alike, and their common

18 underlying policy of protecting the secrecy and sanctity of jury deliberations, defeat jury

19 misconduct claims based exclusively on allegations of intra-jury harassment.  See e.g. Estrada v.

20 Scribner, 512 F.3d 1227, 1232-34, 1237-38, (9th Cir.), cert. denied, 554 U.S. 925 (2008).

21         In this case the trial court's denial of the new trial motion and the appellate

22 court's affirmance of that ruling were largely based on the factual finding that Juror No. 4's

23 request for clarification had been satisfied by the judge's response to jury notes on May 29,

24 2007.  Whether that finding is subject to § 2254(d)(2) or to the pre-AEDPA presumption of

25

26        [11]    In Grotemeyer, unlike the present case, the juror conduct at issue did constitute
   misconduct under state law.  Id.

1   correctness,[12] it should not be disturbed here.  There was no objectively unreasonable result or

2   flaw in the state court's fact-finding process that would support de novo fact-finding in this

3   court.  In any case, there would be no misconduct implicating the Sixth Amendment even on

4   Yang's version of the facts.

5          Finally, even if the foreman's failure to send another request for clarification

6   constituted cognizable  misconduct, Yang cannot establish prejudice.  Juror misconduct is

7   subject to harmless error analysis.  Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir. 2000).   The

8   prejudice inquiry focuses not on Juror No. 4's state of mind, evidence of which is inadmissible

9   pursuant to the authorities previously discussed, but on the objective circumstances surrounding

10  the deliberations.  See, e.g., Estrada, 512 F.3d at 1238 (setting forth factors relevant to prejudice

11  from jury exposure to extrinsic evidence); Fields v. Brown, 503 F.3d 755, 781-82 (9th Cir. 2007)

12  (finding no prejudice from juror sharing of his notes regarding Bible verses, based on review of

13  objective circumstances), cert. denied, 552 U.S. 1314 (2008).[13]

14         The totality of the relevant circumstances in this case do not support a finding of

15  prejudice.  The jury was properly instructed regarding aiding and abetting liability.  CT 486-487.

16  In response to written questions from the deliberating jury, the judge referred jurors back to

17  those instructions, CT 519-522, and correctly explained that "[a]n 'aider and abetter' can be

18  guilty of 1st degree murder if you find defendant acted with express malice and also knew the full

19  extent of the perpetrator's criminal purpose and gave aid or encouragement with the intent or

20  purpose of facilitating the perpetrator's commission of the crime."  CT 522.  The chronology of

21  deliberations, discussed in relation to Claim One, does not suggest that the absence of further

22  _____

23         [12]    28 U.S.C. § 2254(d) (1994); see also Townsend v. Sain, 372 U.S. 293 (1963),
    overruled in part on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

24

25         [13]    Prejudice is presumed only in cases involving jury tampering or other improper
    contacts between jurors and witnesses or interested parties.  Xiong v. Felker, 681 F.3d 1067,
    1076 (9th Cir. 2012), petition for cert. filed, No.12-7454 (Nov. 24, 2012).   This is not such a
26  case.  Even where the presumption of prejudice applies, it can be overcome.  Id. at 1076.

instruction affected the verdict.  On this record, it is not reasonably likely that the jury was

prejudiced by the absence of another request for clarification.  The jurors had been instructed

regarding their dual duty to  to decide the case for themselves individually and to deliberate with

each other, CT 493, and there are no facts which would overcome the presumption that these

instructions were followed.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (applying "the

almost invariable assumption of the law that jurors follow their instructions").

The trial court's denial of the motion for new trial therefore did not violate due

process, and the appellate court's rejection of the claim did not constitute an unreasonable

application of clearly established Federal law.  This sub-claim should be denied.

### D.    The Denial Of Juror Identifying Information

The state appellate court's discussion of the request to unseal juror information

also applied state law:

> During the hearing on the motion for a new trial, counsel for Yang
> stated that Juror No. 4 had given him four names of jurors who
> would be able to corroborate the testimony of Juror No. 4
> concerning the deliberations, although counsel candidly admitted
> that Juror No. 4 was "somewhat vague in exactly what they could
> corroborate." After Juror No. 4 testified, counsel for Yang
> requested the court to allow him "to file a motion to unseal juror
> records" so that he could contact other jurors and attempt to
> corroborate Juror No. 4's allegations of misconduct. After further
> argument, the court denied the motion for a new trial and "the
> request for a further inquiry into the jurors['] deliberations by
> unsealing the juror information."
>
> On appeal, Yang contends that, even if the evidence presented in
> support of the motion for a new trial was not sufficient to find that
> the trial court abused its discretion in denying the motion for a new
> trial, the evidence was sufficient to require the trial court to grant
> Yang's oral motion to unseal juror information. The contention is
> without merit.
>
> "Pursuant to [Code of Civil Procedure] Section 237, a defendant or
> defendant's counsel may, following the recording of a jury's verdict
> in a criminal proceeding, petition the court for access to personal
> juror identifying information within the court's records necessary
> for the defendant to communicate with jurors for the purpose of
> developing a motion for new trial or any other lawful purpose.
> This information consists of jurors' names, addresses, and

26

telephone numbers. The court shall consider all requests for personal juror identifying information pursuant to Section 237." (Code Civ. Proc., § 206, subd. (g).)

Code of Civil Procedure section 237, subdivision (b) provides: "Any person may petition the court for access to these records. The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information...."

A request for disclosure of personal juror identifying information must be "accompanied by a sufficient showing to support a reasonable belief jury misconduct occurred, diligent efforts were made to contact the jurors through other means, and that further investigation was necessary to provide the court with adequate information to rule on a motion for new trial." (*People v. Wilson* (1996) 43 Cal.App.4th 839, 850; see also *People v. Rhodes* (1989) 212 Cal.App.3d 541, 551-552.) "Absent a satisfactory, preliminary showing of possible juror misconduct, the strong public interests in the integrity of our jury system and a juror's right to privacy outweigh the countervailing public interest served by disclosure of the juror information as a matter of right in each case. This rule safeguards both juror privacy and the integrity of our jury process against unwarranted 'fishing expeditions' by parties hoping to uncover information to invalidate the jury's verdict. At the same time, it protects a defendant's right to a verdict uninfluenced by prejudicial juror misconduct by permitting, upon a showing of good cause, access to juror information needed to investigate allegations of juror misconduct." (*People v. Rhodes*, *supra*, at p. 552, fn. omitted.) "A failure to make this required showing justifie[s] denying the request for disclosure." (*People v. Wilson*, *supra*, at p. 850.)

The burden of establishing good cause lies with the movant, in this case defendant (*People v. Granish* (1996) 41 Cal.App.4th 1117, 1131), and we review the trial court's ruling for an abuse of discretion (*People v. Jones* (1998) 17 Cal.4th 279, 317).

Yang did not make a motion to unseal juror information. Instead, he requested the opportunity to file a motion to unseal. Therefore, he cannot complain on appeal that the trial court denied his motion to unseal juror information.

In any event, even if we consider the oral motion to be a written petition to unseal juror information, it was insufficient to establish a prima facie case to support a reasonable belief jury misconduct occurred. As noted, the testimony of Juror No. 4 did not establish that misconduct had occurred. In addition, Yang did not file "a

27

1
2
3
4

> declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information." (Code Civ. Proc., § 237, subd. (b).)  Because Yang did not make a satisfactory preliminary showing that misconduct occurred, the trial court did not abuse its discretion in denying the motion to unseal juror information, even if his oral motion is interpreted as a written petition.

5   People v. Chongt Yang, 2009 WL 3069579 at *7–*8.

6          Consideration of due process and Sixth Amendment principles does not require a

7   different result.  No federal law, clearly established by the Supreme Court or otherwise, requires

8   a state court to permit post-trial access to jurors in a fishing expedition for misconduct.  See

9   Grotemeyer, 393 F.3d at 881 (no constitutional violation in state court's denial of further factual

10  development regarding jury misconduct allegations). The state courts' allegedly improper

11  application of Cal. Code Civ. P. § 237 is not a basis for federal habeas relief.  See Estelle v.

12  McGuire, 502 U.S. 62, 67–68 (1991).  Because Yang's showing on the new trial motion did not

13  establish a prima facie case of misconduct, the foreclosure of further investigation cannot

14  support habeas relief.

15         The trial court's denial of the request to unseal did not violate due process, and

16  the appellate court's rejection of the claim did not constitute an unreasonable application of

17  clearly established Federal law.  This sub-claim should be denied.

18      **E.      The Denial Of A Continuance**

19         Regarding the trial court's denial of a continuance, the state appellate court stated:

20
21
22

> In connection with his motion for a new trial, Yang filed a written motion for a continuance. In it, his trial counsel declared that a continuance was "necessary to bring [a] motion to unseal jury records."  The trial court did not expressly rule on the motion for a continuance.

23
24
25
26

> Yang contends that the trial court abused its discretion by denying the motion for a continuance "because it deprived [Yang] of a reasonable opportunity to obtain juror information which might have resulted in a new trial." The Attorney General responds that, because Yang did not obtain a ruling on this motion, he cannot contend on appeal that the trial court abused its discretion in denying it. We agree with the Attorney General.

1

2

3

4

5

6

7

8

9

    Where the court, through inadvertence or neglect, neither rules nor reserves its ruling, the party who is seeking the ruling must make some effort to have the court actually rule. (*People v. Braxton* (2004) 34 Cal.4th 798, 813-814.) The party's failure to do so may be considered a forfeiture of the issue. (Ibid.; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)  That is the case here.  The trial court did not rule expressly on the motion for a continuance, and Yang did not point out this oversight to the court.

    In any event, the court did not abuse its discretion even if we were to find that the trial court implicitly denied the motion for a continuance. Yang was unsuccessful in establishing that a continuance would have resulted in the gathering of evidence of jury misconduct. (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1105 [not abuse of discretion to deny continuance if defendant fails to carry burden that it would benefit defendant].)

People v. Chongt Yang, 2009 WL 3069579 at *9.

10

11

12

13

14

15

16

17

    Consideration of due process and Sixth Amendment principles does not require a different result.  The denial of a continuance, like the refusal to unseal juror information, cannot have impaired Yang's constitutional rights because there was no showing of juror misconduct.  Accordingly, no constitutional rights of Yang's were implicated.  See Grotemeyer, 393 F.3d at 881 (no constitutional violation in state court's denial of further factual development regarding jury misconduct allegations).  The state courts' allegedly improper application of California law is not a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

18

19

20

21

22

23

24

25

26

    On appeal Yang relied on Ungar v. Sarafite,  376 U.S. 575, 589 (1964), for the (implied) proposition that due process required a continuance because Yang made a showing of good cause.  Ungar held that the denial of a continuance of contempt proceedings did not violate due process where the ensuing proceeding was fair.  The Ungar court explained in general terms that denial of a continuance violates due process only where it is arbitrary and impairs the defendant's substantive rights.  Id. at 589-591; see also Morris v. Slappy, 461 U.S. 1, 11-12 (1983) ("broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel.").  In the instant case the ruling was not

1   arbitrary and did not deny Yang's substantive rights for the reasons already explained.

2         The trial court's denial of a continuance did not violate due process, and the

3   appellate court's rejection of the claim did not constitute an unreasonable application of

4   clearly established Federal law.  This sub-claim should be denied.

5         Accordingly, IT IS RECOMMENDED that the petition be denied.

6         These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

8   days after being served with these findings and recommendations, any party may file written

9   objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11   shall be served and filed within fourteen days after service of the objections.  The parties are

12   advised that failure to file objections within the specified time may waive the right to appeal the

13   District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14   DATED: December 27, 2012.

15

16                    _____

17                    ALLISON CLAIRE
                      UNITED STATES MAGISTRATE JUDGE

18   AC
    yang0212.hab

19

20

21

22

23

24

25

26